# Watson, Appellant, *v.* Scranton Trust Company.

*Trusts and trustees—Trustee under corporation mortgage—Cestui que trust—Bondholder—Sale of trust property—Inadequacy of price—Supine negligence—Surcharge.*

In a proceeding by a bondholder to secure an accounting by the defendant as trustee under a corporation mortgage it appeared that the defendant had purchased the mortgaged property at a foreclosure sale for $26,000; that but little more than a year later the defendant offered the property at public sale, at which time it was sold to a bidder for $8,095; and that the plaintiff was not present at the sale, but at that time representatives of other stockholders were present and after giving notice that the sale would pass no title bid it in at the price named. It further appeared that the sum realized for the property was only a fraction of its value,

that no compelling reason appeared for the sale of the property at the time, under the peculiar circumstances, or for the price which was received. *Held,* that the plaintiff was not estopped by the action of other bondholders who were present at and participated in the sale, and that as to him the defendant was guilty of supine negligence in not adjourning the sale and attempting to realize more for the property and should be held responsible for his proportion of the fair and reasonable value of the property as of the date of the sale.

Argued Feb. 25, 1913. Appeal, No. 60, Jan. T., 1913, by plaintiff, from judgment of C. P. Lackawanna Co., June Term, 1911, No. 127, dismissing exceptions to an account in the case of David G. Watson v. Scranton Trust Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Petition for an accounting by a trustee under the Act of June 14, 1836, P. L. 628, 633. Before NEWCOMB, J.

The facts appear by the opinion of the Supreme Court.

The court dismissed plaintiff's exceptions to the defendant's account and confirmed the same finally.

*Error assigned* was in dismissing exception and confirming the account.

*W. L. Hill,* for appellant.

*H. A. Knapp,* of *Warren, Knapp & O'Malley,* and *S. B. Price,* for appellee.

OPINION BY MR. JUSTICE POTTER, May 5, 1913:

In this proceeding the plaintiff, in his capacity as a bondholder, filed a petition to secure an accounting by the defendant as trustee. The facts involved are for the most part the same as those in the case of Nay Aug Lumber Company, et al., against the same defendant, in which an opinion has just been filed. In that case a bill in equity was filed to restrain the defendant company

from selling the premises which formerly belonged to the Scranton Driving and Field Association, and which had been purchased by the defendant trust company at sheriff's sale. The bill in that case was dismissed by the court below, and the sale of the property took place on July 12, 1911. Notice seems to have been given to all of the bondholders, and a majority of them were present at the sale. It appears that counsel for the Nay Aug Lumber Company and other bondholders gave notice that the sale would pass no title; nevertheless the property was knocked down to the highest bidder, who was an attorney representing, as the court below expressed it, "the Nay Aug faction of bondholders," for $8,095, and the purchase money was paid. The defendant trustee then presented a petition to the Court of Common Pleas asking for an order confirming the sale. But the court refused to confirm on the ground that it was not a judicial sale, and that confirmation by the court was unnecessary, and would be without legal effect.

In response to the petition filed by the plaintiff in this case, the court below, on June 19, 1911, ordered an account to be filed within sixty days, and on August 10th, the defendant company filed two accounts; one as trustee for judgment creditors, and one as trustee for bondholders under the mortgage. On August 12th, the property having been sold in the meantime, the court ordered the account to be restated within ten days, so as to include in the second section thereof the sum of $8,095, being the amount received from the sale of the trust property. Exceptions to the account filed by the present appellant were dismissed by the court, and the account as restated was confirmed. The exceptant has appealed, and his counsel have filed thirty assignments of error. Twenty-eight of these are to the dismissal of various exceptions to findings of fact and conclusions of law by the trial judge and to his answers to requests for such findings and conclusions. The twenty-ninth assignment is to the dismissal of plaintiff's exception to

the order of the court below that the account be restated so as to include in the second section thereof the sum of $8,095 as a debit realized from the sale of the trust property, and that thereupon the exceptions be dismissed at exceptant's costs. The thirtieth assignment is to the final decree dismissing plaintiff's exceptions to the account, and confirming the account as stated. In his argument counsel for appellant groups the assignments of error into two general classes; those relating to the purchase of the mortgaged premises by the trustee at the sheriff's sale, and those relating to the sale by the trustee of the property which it purchased on behalf of the bondholders at the sheriff's sale. The questions relating to the right of the defendant as trustee to purchase the property were raised and considered in the appeal of the Nay Aug Lumber Company, which was argued with the present appeal, and these questions were disposed of in the opinion filed in that case.

Of the questions relating to the sale of the property, the most serious is the contention that the trustee was guilty of supine negligence in its management of the property and in disposing of it for an inadequate price. Appellant seeks to surcharge the defendant with the difference between the purchase price at the sheriff's sale, $26,000, and the sum of $8,095 realized for the property at its subsequent sale by the trustee, and he seeks also to surcharge the trustee with the sum of $500 claimed by it as compensation for its services. It is argued that the property was allowed to deteriorate while in charge of defendant. As to this it was shown that the buildings and fences on the property were not kept up, but it does not appear that this fact affected materially its market value, or the selling price. The only testimony as to value which we find is that of Mr. Wilcox, trust officer of appellee, who said that in his opinion the property was worth under favorable circumstances, $26,000 "as a building lot proposition." Its value for this purpose does not seem to have been greatly affected by the de-

struction of the fences and sheds which were erected upon it when used for the purposes of a driving park. As the use of the property for that purpose was abandoned, it may be presumed that its value for such use was less than "as a building lot proposition."

The second ground urged as a reason for surcharging the appellee raises the principal question in this case. At the sheriff's sale, $25,500 was bid for the property. The defendant then raised the bid to $26,000, and became the purchaser at that figure. Something more than a year later, this same property which it had refused to let go at the sheriff's sale for $25,500, and which its trust officer says is in his opinion worth $26,000 under favorable circumstances, was sold by it for $8,095, which the court below in its eighth conclusion of law states was "only a fraction of the value of the property." That this was an inadequate price can hardly be questioned. The court below realized this fact, but said that for the result of the sale "the exceptants who then and there assailed the title are answerable, and not the accountant." It does not appear, however, that the appellant in this proceeding was among the exceptants to whom reference was made. The exceptants seem to have been the Nay Aug Lumber Company, L. A. Patterson and S. C. Whitmore, who were plaintiffs in the bill in equity which was filed in an attempt to prevent the sale. One of their attorneys announced at the sale that, on behalf of the plaintiffs in the equity suit, he gave notice that no title would pass under the sale, but the sale proceeding, the property was purchased for $8,095 by an attorney acting for one of the plaintiffs in the equity suit. The present proceeding was instituted by David G. Watson, who was a bondholder, but was not a party to the injunction suit. He testified that he was not present at the sheriff's sale; and was not represented there by anyone else. It may very well be that, as was held by the court below, the parties who discredited the sale and gave notice that no title would pass thereunder, are barred by their own acts

from questioning, as bondholders, the result of the sale; but it is not apparent why this appellant should be so estopped. He was a party neither to the giving of the notice, nor to the purchase. His counsel contend in his behalf that when the trustee found that the notice given had materially affected the sale, and that an adequate price for the property could not then be obtained, its duty was to withdraw the property for the time being, and adjourn the sale; and that its failure to do so was gross negligence resulting in a heavy loss to other and innocent bondholders, for which the trustee is liable. We are impressed with the force of this contention. We do not see any basis upon which to rest the conclusion of the court below, that appellant is estopped by the action of other bondholders who were present at and participated in the proceedings at the sale. It will be conceded that a trustee is liable only in case of supine negligence or wilful default. The court below finds that the property was sold for a fraction of its value, and no compelling reason appears for the sale of the property at that time, under the peculiar circumstances, or for the price which was received. The finding of the court as to the inadequacy of the price was justified by the evidence of appellee's trust officer, who said in effect that the land was worth $26,000 for building purposes under favorable circumstances. The difference between that amount and the price realized, $8,095, is so great as to justify an inference of supine negligence in not adjourning the sale and attempting to realize more for the property, either at private sale or by another public sale. Or an effort to divide the property among the bondholders might have been made. But little more than a year had elapsed since the sheriff's sale at which $25,500 was bid for the property, and there was no evidence of any decrease in value during that period. The court below has made no express finding as to the value of the property at the time it was sold, except in the statement that the sale realized only a fraction of its value. We are of opinion

that the real value of the property as of the date of the sale by the trustee should be ascertained, and that the trustee should be held responsible to innocent bond-holders for their share of that amount, and that unless other good and sufficient reason be shown to the contrary, the appellant in this case will be entitled as a bondholder to his proper proportion thereof.

To the extent only to which the assignments of error cover the failure of the court below to reach this conclusion, they are sustained. It is for the fair and reasonable value of the property as of the date of its sale by the trustee that it must account. This value may or may not have been the same as it was at the date of its purchase for the bondholders by the trustee. The assignments of error do not meet this question accurately. As an instance, the seventh assignment is to the refusal of a request to find that the trustee must account for the value of the property "as of the date of its purchase"; not of its sale. This request as a whole was properly refused on the ground that it contained assumptions as to deterioration, &c., which the court could not sustain. The thirtieth assignment of error is sustained, and the judgment of the court below is reversed, and the record is remitted for the purpose of having the questions affecting the rights of the appellant determined in accordance with the general views herein expressed, and upon the facts as they shall be ascertained upon final hearing.